[Civ. No. 5470.  First Appellate District, Division One.—April 1, 1927.]

ALFRED L. MEYERSTEIN, Respondent, v. GREAT AMERICAN INSURANCE COMPANY et al., Appellants.

[1] FIRE INSURANCE—AMBIGUITIES IN POLICY—CONSTRUCTION.—An insurance policy is a contract of indemnity for loss and, as in the case of construction of contracts generally, the main object, where there is doubt or ambiguity, is to determine in what sense the words employed are used or intended.

[2] ID.—INTERPRETATION OF LANGUAGE USED—COMMON UNDERSTANDING OF PARTIES.—Some flexibility of meaning must be given the language of standard forms of insurance, the rigid language of which must be interpreted in the light of the common understanding of the parties in order to do justice between them; and the construction of a policy of insurance is to be ascertained from

1.  See 14 Cal. Jur. 413.
2.  See 14 Cal. Jur. 440, 443; 14 R. C. L. 925.

the whole instrument, the nature of the property to which the language of the policy is to be applied, the purposes for which the property is ordinarily to be used and its situation.

[3] ID. — LIBERAL CONSTRUCTION — NEW CONTRACT. — Where the language of a policy of insurance may be understood in more senses than one, it is to be construed liberally in favor of the insured, and any uncertainty or ambiguity in the contract is to be interpreted most strongly against the insurer; but this does not mean that a court is authorized to disregard the plain and unequivocal terms of the policy and make a new contract for the parties.

[4] ID. — MEANING OF "ADDITIONS" — CONSTRUCTION TO COVER DETACHED BUILDINGS.—The word "additions" may and is often intended to cover structures not physically connected with or attached to the principal building; and in this action to recover on two policies of fire insurance, the provisions of the policies describing the property insured as the frame building and "additions," etc.. were construed to cover a laundry building, tank, and tank frame which were destroyed by fire, although they were situated about seventy feet from the main building, which was not damaged.

(1) 32 C. J., p. 1148, n. 47. (2) 26 C. J., p. 71, n. 98, p. 72, n. 16. (3) 26 C. J., p. 75, n. 29. (4) 26 C. J., p. 89, n. 38.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Shortall, Judge. Affirmed.

The facts are stated in the opinion of the court.

Goodfellow, Eells, Moore & Orrick for Appellants.

Edwin V. McKenzie for Respondent.

TYLER, P. J.—This is an action to recover a certain sum of money under the terms of two fire insurance policies. The property insured belonged to plaintiff and was used by him as a country home. It was situated at Woodside, San

---

3. Rule that doubtful terms must be construed favorably to insured as applicable to standard policy, note, Ann. Cas. 1913E, 287. See, also, 14 Cal. Jur. 443; 14 R. C. L. 926.

4. Construction of term "additions" in fire policy, notes, 8 Ann. Cas. 94; 10 Ann. Cas. 938; 33 L. R. A. (N. S.) 156. See, also, 14 R. C. L. 954.

Mateo County, and consisted of several buildings located on a tract of land of some twenty acres. The buildings consisted of a dwelling-house, a garage with living-rooms on the second floor which was occupied by female help, and a third building, containing on the first floor a laundry, and on the second two bedrooms and a bath which was used for the male help. Immediately alongside of the house containing the laundry was a wooden tower sixty feet in height on which was mounted a 10,000-gallon redwood water-tank. The garage and laundry building were entirely separate frame buildings situated some seventy feet distant from the main dwelling. The tank frame was also an entirely separate structure and it, too, was some seventy feet distant from such dwelling. The water-tank supplied all the buildings with water through pipes. Between the several houses were concrete paths connecting one with the other. The entire premises including the three buildings and the water tower and tank were inclosed by a fence marking the entire tract owned by plaintiff. On the seventh day of October, 1918, plaintiff caused the property to be insured by defendant companies. The policies are identical in form and the printed portion thereof is the California Standard Form Fire Insurance Policy provided for by statute. Attached to the policies were slips describing the property insured. The coverage clauses in each of the policies, so far as they refer to the buildings, contained the following recitals: "$4,000.00. On the frame building and additions, including equipment, foundations, platforms, porches . . . and fixtures, belonging to or forming part of the building and additions thereto, and also including . . . walks and sidewalks located on, in and around the premises . . . $250.00. On frame bldg. occupied as a private garage situate on same premises . . . " On each of the policies there appeared in typewriting the following: "detached at Woodside, San Mateo, Cal."

"Permission granted to make alterations and repairs to above described building and to build additions, this policy to cover therein and or thereon according to its respective items."

"This policy shall also extend and apply under its respective items, to cover all material and supplies in and or about the within described premises to be used in the con-

struction, reconstruction, alteration and repairing of property mentioned above.''

On September 19, 1920, a fire occurred on plaintiff's premises which destroyed the laundry building, tank and tank frame, but which did no damage to the main dwelling or garage. Proof of loss was made. The insurance carriers denied liability on the ground that the portions of the premises destroyed were not covered by the policies, and this action followed. It will be noticed that while the main dwelling and garage are mentioned in the policies, no specific mention is made of the laundry building or the tank and its frame. It was plaintiff's contention at the trial that the laundry and tank were included in the coverage under the head of ''additions'' to the main building, and as such they were covered by the language of the policy. The lower court sustained this contention. It found that the loss amounted to the sum of $5,103. Judgment was accordingly rendered against each of the defendants for one-half of the total loss. It is from such judgment that this appeal is taken. The sole question here presented is, Was it the intention of the parties by the use of the word ''additions'' in connection with the main building to thereby intend to cover the separate laundry building and tank? [1] Primarily it may be said that an insurance policy is a contract of indemnity for loss and as in the case of construction of contracts generally the main object, where there is doubt or ambiguity, is to determine in what sense the words employed are used or intended. Words are seldom construed by courts literally, but are adjudged according to the context and the approved usage of language; technical words and phrases, and such others as have acquired a peculiar and appropriate meaning in law, are to be construed according to such peculiar and appropriate meaning or definition. (Code Civ. Proc., sec. 16.) [2] In the case of *Taylor* v. *Northwestern Nat. Ins. Co.*, 34 Cal. App. 471 [167 Pac. 899], it is said some flexibility of meaning must be given to the language of standard forms of insurance, the rigid language of which must be interpreted in the light of the common understanding of the parties in order to do justice between them; that the construction of a policy of insurance is to be ascertained from the whole instrument, the nature of the property to which the language of the policy is to be applied, the pur-

poses for which the property is ordinarily to be used, and its situation; that policies of insurance should be interpreted most strongly against the insurance carriers because of the fact that they draw the contracts. (See, also, *O'Neil* v. *Caledonian Ins. Co.*, 166 Cal. 310 [135 Pac. 1121]; *Greer-Robbins Co.* v. *Insurance Co.*, 47 Cal. App. 65 [190 Pac. 187].) [3] Where, then, the language may be understood in more senses than one, the rule of law is that an insurance policy is to be construed liberally in favor of the insured, and any uncertainty or ambiguity in the contract is to be interpreted most strongly against the insurer. (*Northy* v. *Bankers' Life Assn.*, 110 Cal. 547 [42 Pac. 1079]; *Victoria S. S. Co.* v. *Western Assur. Co.*, 167 Cal. 348 [139 Pac. 807].) This, of course, does not mean that these rules will authorize a court to disregard the plain and unequivocal terms of the policy, and make a new contract for the parties. [4] The word "additions" may and is often intended to cover structures not physically connected with or attached to the principal building. The adjudicated cases on the subject, where this word has been employed, are numerous and it has been generally held that where, as here, the buildings were in existence at the time of the issuance of the policy and were used in connection with the main building, that they are included within the meaning of that term. The question is what was intended by the parties to be covered by the policies. In the coverage clause of the instant case it is recited that the policy covers the frame building and additions, including the fences, walks, and sidewalks located on and in or around the premises "situate detached at Woodside," and under the clause relating to the insurance on the personal property it is recited that all betterments and additions paid for by the assured and contained in the main building and additions thereto are included in the coverage clause. Permission was also given to make repairs and alterations to the property insured. It seems manifest to us that the clear intent of the parties was to include in the coverage clause all the property within the inclosure. It specifically included the fences and the walks between the houses located on and "around the premises." The tank and its tower was the source of the water supply to the various buildings and was connected by pipe-lines to the several houses, and they were part of the premises. As

suggested by counsel for respondent, had the tank been located on the roof of the residence proper, there could be no possible question but that it would be included in the policy. Considering the fact that plaintiff was given express authority to make alterations, and the alterations when so made would be covered by the policy, to give to the instruments the construction contended for by appellants would be to render meaningless the word "additions," for there was nothing else of an insurable nature within the inclosure to which it possibly could apply. In our opinion the case is on all-fours with *Taylor* v. *Northwestern Nat. Ins. Co.*, 34 Cal. App. 471 [167 Pac. 899]. In that case the policy, among other things, provided for insurance on a one-story frame building and additions. There was located on the premises a shed used for storage purposes, which was disconnected from the main building, it being a separate structure. The shed was destroyed by fire and the contention was there made, as here, that the word "additions" should be construed as intended to cover only such additions to the store building as were structurally connected therewith. The trial court concluded otherwise, and held that the construction contended for would be too narrow a one to be placed upon the language of the policy. The case was affirmed on appeal, this court holding that the shed was an addition to the store within the meaning of the word "addition" as it was used in the policy. A transfer of this case was denied by the supreme court.

We conclude, therefore, that the language employed in the coverage clauses of the policies is general and comprehensive enough to include the property destroyed, and that it was so intended by the parties.

The judgment is affirmed.

Knight, J., and Cashin, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 26, 1927.