This is an action to recover on a policy of insurance, issued by the defendant upon the life of plaintiff's intestate by the defendant, and tried upon this issue:
1. Is the defendant indebted to the plaintiff, and if so, in what amount? Answer: $1,000, with interest from 1 March, 1911.
From the judgment rendered, the defendant appealed. *Page 154 
The following is a copy of the policy of insurance sued on, together with the indorsements on the back:
 Endowment 20 Years. Age 27; Amount $1,000. Semiannual Premium, $21.86
Metropolitan Insurance Company, in consideration of the application for the policy, copy of which application is attached hereto and made part thereof, and of the payment of the semiannual premium of $21.86, and of the payment of the like amount upon each first day of November and May hereafter until twenty (20) full years premiums shall have been paid, or until the prior death of the insured:
Promises to pay at the home office of the company in the city of New York, to William Ethelbert Albritton, of Scotland Neck, State of North Carolina, on the 1st day of May, 1929, if the insured be then living, or upon receipt at said home office of due proofs of the prior death of the insured, to his estate, $1,000, less any indebtedness hereon to the company.
On the back of said policy of insurance is written:
Nonparticipating Endowment — twenty years.
Insurance on the life of William Ethelbert Albritton, Scotland Neck, N.C.
Amount, $1,000.
Semiannual premium, $21.86.
Due November and May of each year.
Date of policy: May 1, 1909.
The defendant introduced evidence tending to prove that when this policy was issued, the insured asked leave to pay the premium quarterly instead of semiannually, as required by and stated in the policy; that this arrangement was made by the defendant's agent, House, and the assured before the policy was delivered; that the assured, (151) Albritton, paid only the quarterly premium in advance, which was sent to the New York office of the defendant, but the policy itself, which recited the payment of a semiannual premium, was not changed, nor was any change made in the words of the policy contracting for the payment of a semiannual premium. *Page 155 
This evidence tended further to prove that the policy delivered went into effect 1 May, 1909, and the quarterly premium paid by the assured put said policy into effect for three months, towit, until 1 August, 1909. The total amount paid by the assured was $11.14, which is the quarterly premium on a twenty-year endowment policy for $1,000.
The evidence tends, also, to prove that the home office sent out a quarterly receipt, and not a receipt for the six months period. This receipt has not been found, and is not in evidence.
The defendant contends that the policy lapsed for nonpayment of premium on 1 August, 1909, and was canceled 13 September, 1909. The material parts of all this evidence were objected to by the plaintiff in apt time.
At the conclusion of all of the evidence, the court ruled that all evidence offered by the defendant showing that the premiums were payable quarterly instead of semiannually would be withdrawn from the jury, and ruled out. And to this ruling the defendant excepted.
His Honor ruled "that the acknowledgment in the policy of the receipt of the premium estops the company to test the validity of the policy on the ground of nonpayment of the premium," and excluded the evidence offered by the defendant, and charged the jury if they believed all the evidence to find for the plaintiff.
The several assignments of error bring before us for review the correctness of this ruling.
We are of opinion that the agreement specified in the written paper that the premiums are payable semiannually is a contract binding alike upon the insurer and the insured. It is something more than a receipt for money, but is a statement of a definite and fixed time when the money is to be paid.
The insured would not be permitted to prove by parol evidence (152) in the face of that written agreement that when it was entered into another and longer period had been agreed upon when premiums were to be paid, so as to avoid the forfeiture of the policy. Walker v. Venters,148 N.C. 388; Basnight v. Jobbing Co., 148 N.C. 350.
This Court has held that the acknowledgment in a policy of the receipt of a premium for a definite period is something more than a receipt. It is a solemn admission, which, as long as it stands, estops the insurer from contesting the policy for nonpayment of premium. Grier v. Insurance Co.,132 N.C. 543; Kendrick v. Insurance Co., 124 N.C. 315.
In those cases it is held that if the premium is not paid, the acknowledgment of payment in the policy, so far as it is a receipt for money, is only prima facie, and in an action to recover the premium may be contradicted by parol evidence, as the receipt in a deed may in an action *Page 156 
for the purchase money of land; but so far as the acknowledgment is contractual, it cannot be contracted so as to invalidate the contract.Rayburn v. Casualty Co., 138 N.C. 379; Waters v. Casualty Co., 144 N.C. 663.
This subject is very ably and fully discussed by Chief Justice Beasley
in Basch v. Insurance Co., 35 N.J. Law, 429, in which case the policy of insurance contained a provision that the company should not be liable until the premium should be actually paid to the company. The policy also contained a receipt for the full premium. It was held that the company was estopped from setting up the nonpayment of the premium for the purpose of avoiding the instrument. In the opinion the learnedChief Justice says: "The usual legal rule is that a receipt is only primafacie evidence of payment, and may be explained; but this rule does not apply when the question involved is not only as to the fact of payment, but as to the existence of rights springing out of the contract. With a view of defeating such rights, the party giving the receipt cannot contradict it. An acknowledgment of an act done, contained in a written contract, and which act is requisite to put it in force, is as (153) conclusive against the party making it as is any other part of the contract; it cannot be contradicted or varied by parol." See alsoProvident Insurance Co. v. Fennell, 49 Ill. 180; New York InsuranceCo. v. National Pro. Insurance Co., 2 Barb., 471.
Chancellor Kent in his Commentaries says: "The receipt of the premium in the policy is conclusive evidence of payment, and binds the insurer unless there be fraud upon the part of the insured." 3 Kent Com., p. 260.
In his treatise on Insurance, Vance says: "Although there is some conflict of opinion among the authorities, the prevailing opinion seems to be that such a receipt concludes the insurer as far as the validity of the policy is concerned, but is only prima facie evidence of payment in so far as the premium itself is concerned; that is, the insurer cannot deny the truth of the receipt in an action against him in the policy, but may do so in an action against the insured for the purpose of recovering the premium due." Vance on Insurance, p. 180.
The policy sued on acknowledges receipt of premium for six months, and contains a provision that the premium is to be paid semiannually. The law will not permit the defendant to avoid the policy in the face of such recital.
But the defendant in its answer seeks equitable relief, and asks the court to correct and reform the insurance contract so as to provide for a quarterly premium, and so that it may show on its face that only the quarterly premium of $11.14 was actually paid. *Page 157 
The answer avers: "That the policy of insurance sued upon erroneously recites that the premium thereon has been paid for six months, beginning 1 May, 1909, and ending 1 November, 1909; that this error and mistake in the policy occurred in the way hereinbefore set forth, and the fact that the premium for six months had not been paid was well known to the said William E. Albritton as well as to the defendant's agent, and the said policy of insurance should be reformed and corrected so as to recite the fact to be as it occurred: that the assured paid $11.14 by way of quarterly premium, and not the sum of $21.86 semiannual premium, as recited in said policy."
It is now well settled that a policy of insurance may be (154) reformed upon proper allegations and proof, as much so as a deed or any other contract, and that is true even after loss. Snell v. InsuranceCo., 98 U.S. 89; Henkle v. Royal Exchange, 1 Ves., Sr., 318.
But the reformation is subject to the same rules of law as applied to all other instruments in writing. It must be alleged and proven that the instrument sought to be corrected failed to express the real agreement or transaction because of mistake common to both parties, or because of mistake of one party and fraud or inequitable conduct of the other.
A mere misunderstanding of facts is not sufficient ground for asking reformation. 34 Cyc., p. 907. Where the mistake has been on one side only, reformation will not be decreed. The mistake must have been common to both parties. Meekins v. Newberry, 101 N.C. 18; Basnight v. Jobbing Co.,148 N.C. 357.
There is no allegation in the answer of the defendant that there was any fraud practiced by the insured whereby the defendant entered into a contract it did not intend to make, nor is there any allegation that the contract failed to express the true agreement because of a mutual mistake.
And there is likewise no proof to sustain any such allegation if it had been made. According to the evidence, if any mistake was made in the written policy, it is to be attributed solely to the defendant.
The insured, Albritton, had nothing to do with the preparation of the policy, and there is no evidence that he knew that any such claim of mistake was ever made. The defendant's own evidence shows that defendant received the premium for the quarter, and with full knowledge of the contents of the policy delivered it after receiving such premium.
The defendant made no unwitting mistake. It knowingly delivered the policy it intended to deliver. This is practically admitted in defendant's brief, wherein it is said: "This arrangement was made by the agent, K. L. House, and the assured, Mr. Albritton, paid a quarterly premium *Page 158 
in advance, which was sent to the New York office, but the policy (155) itself, which recited a semiannual premium, was not changed, this being the usual custom of the company.
A court of equity will certainly not on the ground of mistake relieve against the consequences of an act which a party knowingly and intentionally commits and when no fraud is practiced. The defendant better change its custom rather than knowingly to embody in its policies statements it declares are untrue.
The question here is not whether the evidence offered to reform the policy is strong, cogent, and convincing, as in Lehew v. Hewitt,130 N.C. 22, but as to whether upon the pleadings and proofs offered, taking them to be true, there is equitable ground for a reformation of the contract.
That must necessarily be a question of law for the court, and not an issue for a jury.
In the judgment of the Superior Court there is
No error.
Cited: McRae v. Fox, 185 N.C. 348 (2j); Welch v. Ins. Co., 196 N.C. 550
(2f); Burton v. Ins. Co., 198 N.C. 501 (2f); Welsh v. Brotherhood ofR. R. Trainmen, 200 N.C. 189, 190 (2f); Williamson v. Ins. Co.,212 N.C. 378, 379 (2f); Creech v. Assurance Co., 224 N.C. 146 (1f).