[L.A. No. 29528. In Bank. Dec. 9, 1968.]

LESLIE D. SAWYER, Plaintiff and Respondent, v. STATE FARM FIRE AND CASUALTY COMPANY, Defendant and Appellant.

*Assigned by the Chairman of the Judicial Council.

Gene E. Smith and Banyard & Portigal for Defendant and Appellant.

Gilbert, Thompson & Kelly, Jean Wunderlich and H. Thomas Ellerby as Amici Curiae on behalf of Defendant and Appellant.

Strop & Hamrick and Ben W. Hamrick for Plaintiff and Respondent.

SULLIVAN, J.—We hold in this case that the acknowledgment of the receipt of the premium in a policy of automobile liability insurance which has been delivered is conclusive evidence of its payment and precludes the insurer from cancelling the policy for nonpayment of the premium. As we explain *infra*, the above rule obtains even where the policy has become operative and gone into effect and notwithstanding the fact that the insurer, pursuant to pertinent provisions as to

written notice, seeks to cancel the policy on such grounds prior to the occurrence of any loss. We conclude therefore that the trial court properly excluded evidence offered by defendant as to the nonpayment of the premium. We therefore affirm the judgment.

In April 1961 in San Francisco, defendant issued to Mr. and Mrs. William Kingston a policy of automobile liability insurance which under its insuring agreements provided coverage to them for bodily injury liability and property damage liability with respect to their Plymouth automobile until a specified date in October 1961. The premium for said policy was prepaid. Thereafter the Kingstons acquired a second car and moved from San Francisco to Hanford. On August 31, 1961, they went to the office of defendant's agent in Hanford, gave notice of their change of address, and arranged for insurance to cover both of their automobiles.

On October 19, 1961, at Hanford defendant issued and delivered to the Kingstons a new policy providing the same coverages to them for both cars for the period of August 31, 1961 to April 29, 1962. The premium for the new policy was stated therein to be $106.77. On August 31, 1961, however, the Kingstons were entitled to a credit of $22.28 which represented the amount of the unearned premium on the former policy, leaving a balance of the premium due on the new policy of $84.49. A statement accompanying the policy fixed November 6, 1961, as the date upon which this balance was to be paid. Thereafter the Kingstons made two payments on account of the premium: $28 on November 2 and $16.24 on November 6, reducing the above balance to $42.25.[1]

The insuring agreements of the policy are prefaced by the following language: "STATE FARM FIRE AND CASUALTY COMPANY . . . In consideration of the premium paid and in reliance upon the declarations made a part hereof, agrees with the insured named herein, subject to the provisions of the policy."

Among the "conditions" of the policy appear the following provisions: "Cancellation. . . . The company may cancel this policy by written notice, addressed to the insured named in the declarations and mailed to the address shown therein, stating when not less than ten days thereafter cancellation

---

[1]The total amounts paid by Mr. Kingston plus the credit from the cancellation of the prior policy would appear to reduce the balance of the premium to $40.25. Defendant claims, however, that the payments included a $2 service charge agreed to by Mr. Kingston.

shall be effective. Such notice of cancellation shall be sufficient notwithstanding the death of the insured named in the declarations.

"The mailing of the notice shall be sufficient proof of notice and the effective date and hour of cancellation stated therein shall become the end of the policy period. Delivery of written notice shall be equivalent to mailing.

"If the named insured cancels, earned premiums shall be computed in accordance with the company's short rate table and procedures. If the company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter, but the payment or tender of unearned premiums is not a condition of cancellation."

On November 13, 1961, Mr. Kingston wrote to defendant at Hanford requesting a policy endorsement containing a loss payable clause in favor of Household Finance Corporation and concluding: "In the event my policy lapses or comes due for renewal, please notify both me and the Household Finance Corporation."

On February 13, 1962, defendant mailed to the Kingstons pursuant to the pertinent policy provisions a notice of cancellation stating in substance that the policy was cancelled for nonpayment of premium, said cancellation to be effective on February 26, 1962.

On February 28, 1962, two days after the purported cancellation, Mrs. Kingston then a resident of San Diego County, while driving her Plymouth automobile caused it to come into collision with a motorcycle driven by plaintiff, as a result of which collision plaintiff sustained personal injuries. The Kingstons notified defendant insurer which immediately investigated the accident. Defendant's claims adjuster concluded that Mrs. Kingston was clearly liable and that plaintiff's claim "had a potential value in excess of a policy limit of $10,000." Defendant, however, declined to recognize any obligations under the policy on the ground that it had been effectively cancelled prior to the accident.[2]

Plaintiff commenced an action for damages against Mr. and Mrs. Kingston. The latter promptly tendered defense of the

[2]Our above statements as to the amounts credited to and paid on account of the premium on the new policy and as to defendant's purported cancellation of the policy do not reflect evidence in the record but are gleaned from defendant's several offers of proof made in support of its defense that the policy had been effectively cancelled before the accident. We set forth such matters at this point in order to preserve the chronology of the statement of facts.

action to State Farm which refused to accept it, claiming that the policy provided no coverage for the accident. Plaintiff made an offer to State Farm to settle the action and all his claims for $10,000, the limits of the policy. It was rejected for the same reason that the tender of defense had been refused. Eventually plaintiff obtained a default judgment against Mrs. Kingston in the sum of $27,530.45.

On April 25, 1963, plaintiff commenced the instant action against defendant State Farm both as the judgment creditor of defendant's insured, Mrs. Kingston (Ins. Code, § 11580) and as Mrs. Kingston's assignee of all her rights and claims arising out of defendant's refusal to assume the defense of or to settle plaintiff's original action against the Kingstons. The trial court refused to receive evidence offered by defendant insurer that the new policy issued to the Kingstons was delivered without payment of the premium, that the premium was not paid and that the policy was cancelled pursuant to its terms two days before the accident. Plaintiff's objections to such evidence were sustained and defendant's offers of proof were rejected on the ground that the proffered evidence was irrelevant and immaterial in view of a conclusive presumption of the payment of the premium arising out of an acknowledgment of such payment contained in the policy. (See Ins. Code, § 484.)[3] After the defense had rested its case, the court granted plaintiff's motion for a directed verdict and pursuant to its direction, the jury returned a verdict in favor of plaintiff and against defendant State Farm in the sum of $27,530.45[4] together with interest. Judgment on the verdict was entered accordingly. This appeal followed.

The pivotal question confronting us is whether the new policy of automobile liability insurance issued by defendant to the Kingstons was in effect at the time of the accident on February 28, 1962. In our resolution of this question we must determine whether the court erred in excluding the evidence

---

[3]Objections were also sustained, for the same reason, to offers of proof that the Kingstons had never understood the words ''in consideration of the premium paid'' as constituting a receipt for the premium; that they regarded as receipts for premiums paid the individual receipts received with each payment; that they knew that a balance was due on the premium, and that defendant could cancel for nonpayment thereof.

[4]The amount of $27,530.45 is the total of (a) $10,030.45 representing the contractual limits of the policy plus costs as sought to be recouped under the first count of plaintiff's complaint and (b) $17,500 representing the excess for which Mrs. Kingston became indebted to plaintiff as a result of defendant's refusal to assume its obligations under the policy, as sought to be recovered under the second count.

offered by defendant for it is obvious that if defendant was entitled to establish that the premium had not been paid and that the policy had been cancelled before the accident because of such nonpayment, the direction of a verdict was improper and plaintiff's judgment entered thereon cannot be upheld.

Section 484 of the Insurance Code provides: "An acknowledgment in a policy of the receipt of premium is conclusive evidence of its payment, so far as to make the policy binding, notwithstanding any stipulation therein that it shall not be binding until the premium is actually paid."[5]

In an attempt to escape the reach of the statute, defendant initially contends that the policy does not contain an acknowledgment of the receipt of the premium. Although the policy deals only briefly with the matter, we can ascribe no meaning to the recital that the agreement was made in consideration of "premium paid" other than an acknowledgment that the premium due under the policy had been paid. The reference is not to the premium "to be paid," "when paid," or "if paid," but only to premiums "paid." The language in the instant case is therefore too clear to lend itself to any other meaning and such conclusion finds ample support in the decisional law.

Thus where a policy contained the language " 'In consideration . . . of the payment in advance of One Hundred & twenty four & 25/100 (124.25) Dollars, . . .' " it has been held that such recital "constituted . . . an acknowledgment of the receipt of the annual premium within the meaning of said [former Civ. Code] section 2598 . . ." (Masson v. New England M. L. Ins. Co. (1927) 85 Cal.App. 633, 638, 643 [260 P. 367].) Similarly, the following words in a policy: " 'This insurance is granted in consideration of the . . . payment of the annual premium of One Hundred Seventy-One and 65/100 Dollars . . .' " were held to be "in effect an acknowledgment of the receipt of the premium" within the meaning of former Civil Code section 2598. (Kamischer v. John Hancock Mut. L. Ins. Co. (1934) 1 Cal.App.2d 629, 630 [37 P.2d 126].) Finally, in Palmer v. Continental Ins. Co. (1901) 132 Cal. 68, 70 [64 P. 97], the policy in question recited that it was executed " 'in consideration of twelve dollars paid, and the pay-

---

[5]Insurance Code section 484 was enacted in the identical language of Civil Code section 2598 which was simultaneously repealed in 1935. (Stats. 1935, ch. 145, p. 509, § 484.) Such sections are a codification of the common law and today state the applicable rule in the majority of the states. (See Masson v. New England M.L. Ins. Co. (1927) 85 Cal.App. 633, 639-640 [260 P. 367]; 2 U.C.L.A.L.Rev. 141.)

ment of installments when due, on an installment note for forty-eight dollars, . . .' '' This court held that the above recital constituted an acknowledgment within the meaning of former Civil Code section 2598 stating that the "policy herein *acknowledges* the receipt of the twelve dollars, . . ." (*id.* at p. 71, italics added) and observing as to such recital that "Its effect is of the same character as the vendor's acknowledgment, in a conveyance of land, of the receipt of the purchase price . . ." (*id.* at p. 71). We point out that the recital in the *Palmer* policy is almost identical with the recital in the policy before us except that the latter uses the words "premium paid" instead of giving the amount of the premium paid.

In the case before us the recital that the premium was "paid" is in a sense more definite than the recitals in *Masson* and *Kamischer* although the amount paid is not stated in the recital. Furthermore, as we have said, the recital in the instant case is practically identical with the recital in *Palmer*. No significance can be attached to the fact that the specific *amount* paid is not repeated in the recital since the amount is readily identified under the declarations of the policy. In the absence of other qualifying language and under settled rules for the construction of insurance contracts against the insurer (see *Insurance Co. of North America* v. *Electronic Purification Co.* (1967) 67 Cal.2d 679, 689 [63 Cal.Rptr. 382, 433 P.2d 174]; *Humphrey* v. *Equitable Life Assur. Soc.* (1967) 67 Cal.2d 527, 532 [63 Cal.Rptr. 50, 432 P.2d 746]; *Masson* v. *New England M. L. Ins. Co., supra,* 85 Cal.App. 633, 643), the amount acknowledged to have been paid must be deemed to be that amount for the stated term of the policy ending on April 29, 1962. We are satisfied that the policy contains "[a]n acknowledgment . . . of the receipt of premium . . ." (Ins. Code, § 484.)

We therefore turn to consider whether this acknowledgment precluded defendant's cancellation of the policy for nonpayment of premium and thus demolishes the main defense to the action.

■ It is the rule in California, as well as in many other jurisdictions, that the acknowledgment of payment of premium in a policy which has been delivered is, in the absence of fraud, conclusive evidence of its payment so as to make the policy binding notwithstanding any stipulation therein that it shall not be binding until the premium is paid. (Ins. Code, § 484; *Palmer* v. *Continental Ins. Co., supra,* 132 Cal. 68;

*Farnum* v. *Phoenix Ins. Co.* (1890) 83 Cal. 246, 255 [23 P. 869, 17 Am.St.Rep. 233]; *Kamischer* v. *John Hancock Mut. L. Ins. Co., supra,* 1 Cal.App.2d 629, 630; *Masson* v. *New England M. L. Ins. Co., supra,* 85 Cal.App. 633, 642-644; 28 Cal.Jur.2d, Insurance, § 604, pp. 375-376; 46 C.J.S., Insurance, § 1354, p. 524; 29A Am.Jur. Insurance, § 1924, pp. 977-978; 15 Appleman, Insurance Law and Practice (1944) § 8463, pp. 299-304; 1 Couch on Insurance 2d, § 9:28, pp. 395-397; 1 Joyce, The Law of Insurance (2d ed.) § 86, pp. 303-308; see note in 2 U.C.L.A. L.Rev. pp. 141-143.) While this rule has been invoked to foreclose the insurer's claim that the policy had not gone into effect at all for the reason that the premium had not in fact been paid, it has also been invoked to bar cancellation where admittedly the policy had already become effective. We have found no California authority, nor have we been cited to any, holding that the rule is applicable to the first type of situation exclusively.

Thus in *Palmer* v. *Continental Ins. Co., supra,* 132 Cal. 68, the defendant issued a policy of fire insurance for a term of five years from a specified date in June 1897. The policy recited that it was executed "in consideration of twelve dollars paid, and the payment of installments when due, on an installment note for forty-eight dollars" due on the first day of June in the next four years. The insured executed and delivered the promissory note for $48 and, despite the recital in the policy of " 'twelve dollars paid,' " executed and delivered in lieu thereof a second note for $12.65 with a due date of October 1, 1897. The policy and the notes contained disclaimers of the insurer's liability for any loss under the policy while any note or premium obligation remained due and unpaid, and provided that the policy would lapse during any default period.

The note for the first annual premium was not paid when it became due on October 1, and a fire loss occurred on October 11, 1897, before the tender of any payment.

This court said in *Palmer*: "By the recital in the policy that it was made 'in consideration of twelve dollars *paid* [emphasis by the court],' the defendant is estopped from showing, for the purpose of disputing the validity or binding effect of the policy, that such payment had not been made." (132 Cal. at p. 70.) Any doubt that the "validity or binding effect" language is intended to limit the applicability of section 2598[6] to *merely the creation* but *not the continuing*

---

[6]*Former Civil Code section 2598, the predecessor to Insurance Code section 484. See footnote 5, ante.*

*effect* of the contractual relationship during the full period of the acknowledged premium is completely dispelled by the following language: ''The policy herein acknowledges the receipt of the twelve dollars, which, so far as the payment of premium is concerned, rendered the contract of insurance binding *until the first day of June, 1898,* and it is immaterial whether the plaintiffs made the payment in money or by giving their note therefor. The binding effect of the policy caused by this acknowledgment *continued until another year's premium should fall due,* unless in the mean time there should be some breach of condition by the insured, *other than the payment of the first year's premium.* The provision for forfeiture contained in the stipulation in the policy is limited to the non-payment of the promissory note referred to therein as *thereafter* to mature, *and cannot apply to the non-payment of the note given for the premium, payment of which is acknowledged.''* (132 Cal. at p. 71; italics added.)

In *Masson* v. *New England M. L. Ins. Co., supra,* 85 Cal. App. 633, defendant issued a twenty-year endowment policy of life insurance which recited that the insurer's promises were ''in consideration of the application . . . *and of the payment in advance of One Hundred & twenty four & 25/100 (124.25) Dollars''* (italics in original) and of the payment of a like sum on a specified date of each succeeding year. However, since the insured was unable to pay the first year's premium in full, the insurers' representative informed him that he could pay it quarterly. The insured then paid the premium for the first quarter and executed and delivered three promissory notes for the remaining three quarters. The note for the second quarter's premium was not paid when due and the insurer advised that it could not further extend credit except upon the prompt payment of the major portion of that note. No payment having been made, the insurer took steps to cancel the notes but before this was accomplished, the insured died. The policy, the notes and a receipt given for the notes all recited that the policy would be cancelled upon failure of payment of the premium or of the notes when due, without further notice to the insured.

Despite such provisions for automatic cancellation, after the insurance contract admittedly had become binding and effective, the court upheld the beneficiary's recovery on the policy. Relying inter alia upon the *Palmer* case, and referring to the *Farnum* case, the court said: ''We therefore believe, in view of the authorities above cited and of the rule of construction

that the language of an insurance contract must be interpreted most strongly against the insurer and in favor of the assured because the insurer draws the contract [citations], that the recital of payment in the policy before us constituted, as the trial court held, an acknowledgment of the receipt of the annual premium within the meaning of said section 2598; and that, therefore, coupled with the fact that the policy was delivered to the assured as a valid and completed contract, *estops the company,* in so far as the binding force of the policy is concerned, *to deny that full payment of the annual premium has been made.*'' (Italics added.) (85 Cal.App. at p. 643.)

The principle to be distilled from the *Palmer* and *Masson* cases is that the conclusiveness of the acknowledgment in the policy of the receipt of payment of the first premium precludes the cancellation of the policy for nonpayment of premium at any time during such premium period. The authoritative treatises on the subject have recognized this principle. (See 15 Appleman, *op.cit.* pp. 299-300; 1 Couch 2d, *op.cit.* p. 395, and California cases collected in footnote; 1 Joyce, *op.cit.* p. 304.) For example, the last authority states: ''In California, it is held that if an insurance policy contains a formal receipt of the premium, its unconditional delivery is conclusive evidence of payment so as to estop the company from denying the validity of the policy, notwithstanding the declaration in it that it shall not be binding until the premium is actually paid; that the same result follows where the policy is delivered as a valid and completed contract upon a consideration expressed therein, the receipt of which is impliedly acknowledged.'' In the words of the court in *Britton* v. *Metropolitan Life Ins. Co.,* 165 N.C. 149 [80 S.E. 1072, Ann.Cas. 1915D 363] quoted in the *Masson* case, ''the acknowledgment in a policy of the receipt of the premium for a definite period is something more than a receipt. It is a solemn admission, which, as long as it stands, estops the insurer from contesting the policy for nonpayment of premium.'' (85 Cal.App. at p. 641.)

 We do not deal in the instant case, as in *Palmer,* with the payment of premiums by the execution of notes therefor, but instead with the extension of a limited personal credit and the failure of the insured to comply with the terms thereof. Such factual difference, however, does not constitute a distinction in principle, and was so recognized in *Palmer* in the following language: ''It was competent for the defendant

to accept the note of the insured as payment of the premium, and it can no more dispute the binding effect of the policy by showing that the payment was made by a note which has not been paid, than it could if it had accepted their personal credit in lieu of money.'' (132 Cal. at p. 71.)

We therefore reject defendant's contention that Insurance Code section 484 operates ''for the limited purpose of making the policy initially binding'' but has no ''application to cancellation rights.'' Equally without merit is defendant's argument that its notice of cancellation would have been effective if the Kingstons *had* paid the full premium. The short answer is that for the reasons we have given, the policy could not be cancelled for nonpayment of premium and, on the above hypothesis, could not be cancelled anyway for want of grounds of nonpayment. We conclude that defendant herein was estopped to cancel the policy upon the ground of nonpayment of the premium.[7] Accordingly, the trial court properly refused to receive evidence as to such attempted cancellation.

Defendant's final contention that section 484 does not apply to policies conditionally delivered unless the condition is fulfilled is devoid of merit since the record establishes as a matter of law that the policy here involved was unconditionally delivered.

The attempted appeal from the order denying defendant's motion for a new trial[8] is dismissed. The judgment is affirmed.

Traynor, C. J., Peters, J., Torbriner, J., and Mosk, J., concurred.

McCOMB, J.—I dissent. In my opinion, there is some doubt that the language of the policy here involved should be interpreted to include an acknowledgment of the receipt of premium. In any event, however, it seems to me that defendant had a right, upon proper notice before a loss, to exercise the cancellation right reserved to it in the policy.

Under section 484 of the Insurance Code,[1] if a policy con-

---

[7]The insurer, however, is not estopped from asserting nonpayment in a separate action to recover the premium. (See *Palmer* v. *Continental Ins. Co., supra,* 132 Cal. 68, 70; 29A Am.Jur. p. 977; 1 Couch 2d *op. cit.* p. 398.)

[8]Such order is nonappealable. (Code Civ. Proc., § 963; *Rodriguez* v. *Barnett* (1959) 52 Cal.2d 154, 156 [338 P.2d 907].)

[1]Section 484 of the Insurance Code provides: ''An acknowledgment in a policy of the receipt of premium is conclusive evidence of its payment,

tains an acknowledgment of the receipt of premium, such acknowledgment cannot be contradicted to invalidate the contract; but this does not mean that either party is prohibited from exercising cancellation rights contained in the policy. To interpret section 484 to mean that a policy containing an acknowledgment of the receipt of premium cannot be cancelled, upon proper notice before a loss, is to read words into the statute that are not there, which, of course, is something this court should not do. (*Estate of Simmons,* 64 Cal.2d 217, 221 [4] [49 Cal.Rptr. 369, 411 P.2d 97]; *Vallerga* v. *Department of Alcoholic Beverage Control,* 53 Cal.2d 313, 318 [2] [347 P.2d 909].)

Under the majority's interpretation, the clause ''so far as to make the policy binding'' is expanded to mean ''so far as to make the policy binding for the entire period covered by the premium acknowledged to have been received.'' In my view, it could not have been the intention of the Legislature to so provide. Rather, it appears to me, from the clear language of the statute, that the Legislature intended to provide that if the receipt of premium is acknowledged in the policy, a binding insurance contract has come into existence even though (1) the policy provides that it shall not be binding until the premium is actually paid, and (2) the premium has not been paid. The section does not in any way indicate that such binding contract of insurance is immune from cancellation, when the right of cancellation has been reserved to the insurer in the policy.

In support of its decision, the majority relies on *Palmer* v. *Continental Ins. Co.,* 132 Cal. 68 [64 P. 97], and *Masson* v. *New England M. L. Ins. Co.,* 85 Cal.App. 633 [260 P. 367]. In neither of those cases does it appear that the insurer possessed broad cancellation rights, such as are contained in defendant's policy, and had taken steps to effect a cancellation of the policy before a loss occurred. In *Palmer,* no effort was made to cancel the policy until after a loss had occurred. In *Masson,* notes given by the insured in payment of premiums due were forwarded to the home office of the insured for cancellation, but the insured was killed before the notes were surrendered.

The majority states: ''In the words of the court in *Britton* v. *Metropolitan Life Ins. Co.,* 165 N.C. 149 [80 S.E. 1072,

---

*so far as to make the policy binding,* notwithstanding any stipulation therein that it shall not be binding until the premium is actually paid.'' (Italics added.)

Ann.Cas. 1915D 363] . . . quoted in the *Masson* case, 'the acknowledgment in a policy of the receipt of the premium for a definite period is something more than a receipt. It is a solemn admission, which, as long as it stands, estops the insurer from contesting the policy for nonpayment of premium.' (85 Cal.App. at p. 641.)'' In my opinion, the words ''as long as it stands'' imply that if the policy has been properly cancelled, the insurer is no longer estopped from contesting it.

In *Farnum* v. *Phoenix Ins. Co.*, 83 Cal. 246 [23 P. 869, 17 Am.St.Rep. 233], cited by the majority, the policy provided for cancellation by the insurer on giving notice to that effect and refunding a ratable proportion of the premium for the unexpired term. This court, after discussing the effect of the forerunner of section 484 of the Insurance Code (former Civ. Code, § 2598), said, at page 256: ''When credit is given by an insurance company, it has no right to cancel the policy for non-payment of premium, except after putting the insured in default. . . .''[2] It would appear, therefore, that this court has recognized that although an insurer may not, because of the provisions of section 484 of the Insurance Code, rescind a policy for nonpayment of the premium where receipt thereof has been acknowledged in the policy, it may neverthelesss cancel it for nonpayment of the premium after properly putting the insured in default.

In the present case, defendant did not seek to rescind the policy, but, rather, sought to cancel the unexpired portion for nonpayment of premium. In my view since defendant followed the procedures required by the policy and by the statutes, cancellation was effected as of February 26, 1962, two days prior to the accident in which Mrs. Kingston was involved. Under the circumstances, I would reverse the judgment.

Burke, J., concurred.

---

[2] In *Farnum*, the insurer sought to give notice of cancellation, but the notice was never received by the insured. Under the rule then in effect, the receipt of notice by the insured was necessary to effect a cancellation, and the attempted cancellation was held to be ineffective.