[Civ. No. 33332. Second Dist., Div. Two. May 21, 1969.]

LAWRENCE I. ST. JULIAN, Plaintiff and Respondent, v. FINANCIAL INDEMNITY CO., Defendant and Appellant.

186

Wright & Finley and Robert S. Benner for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

HERNDON, J.—Defendant Financial Indemnity Co. appeals from the declaratory judgment entered in the instant action. It is therein "adjudged that [defendant] issued a valid policy of automobile insurance to plaintiff and that said policy of insurance was in full force and effect for the period from January 3, 1963. until February 25. 1963, provided that plaintiff pay to defendant the sum of $137.34 within ten days after entry of judgment." Appellant makes no specific assignment of error but under the general heading "Argument" contends:

1. "The judgment is inconsistent, contradictory, uncertain, and ambiguous in its terms and is, therefore, erroneous as a matter of law." 2. "The trial court failed to make a finding that either plaintiff or defendant unequivocally accepted the other's offer and therefore the judgment is erroneous as a matter of law." 3. "The judgment is erroneous because as a matter of law no contract of insurance was ever created."

We have concluded that as to that portion of the judgment of which defendant may properly complain, its contentions are without merit. With one exception the determinative facts

are not in dispute. Further, since substantial conflicting evidence was presented on the only contested factual issue, the trier of the fact's resolution thereof is binding on appellate review.

On January 3, 1963, plaintiff, in the offices of John Dial, dba Bernard C. Herndon Insurance Service (Herndon) signed an application for insurance upon a printed form headed by the name and address of plaintiff's general agent, Commerce Insurance Service (Commerce) and captioned "Auto-Rater Application Financial Indemnity Company." Below a space for the applicant's name and address is a box entitled "Agent's Name and Address" wherein Bernard C. Herndon Insurance Service appears. There is nothing whatever on the face of this document to indicate that the "Agent" named therein was without authority to bind the named carrier or that the coverage provided for therein would become effective only after acceptance of the application by the carrier, as evidenced by the issuance of a policy, payment of premiums, or otherwise.

Certain coverages are specified on the face of the application, together with a total cost therefor of $197. Inserted in the blank spaces on the line reading "I request my insurance to take effect —— Expiration date ——" are the figures "1/3/63" and "1/3/64," respectively. Although Dial testified that the Herndon service had no actual authority to bind defendant upon accepting the application, both plaintiff and Patricia Jones, Herndon's "insurance solicitor" who had prepared the application, testified that Jones had informed plaintiff that the insurance took effect immediately.

While the record is clear that neither Dial nor defendant had ever formally registered Herndon as defendant's agent in the manner required by Insurance Code sections 1706 and 1707, and the trial court found that "no evidence [had] been offered by the plaintiff to establish an agency relationship between [Herndon and defendant]," nevertheless, it is apparent that if defendant, or its general agent Commerce, had supplied Herndon with the application utilized in the instant case, such act would have created at the very least, a basis for holding that Herndon, and its employees, as apparent sub-agents of Commerce, had ostensible authority to bind defendant from the time of their acceptance of such an application. However, for purposes of this decision we may accept defendant's contention that Herndon was not its "insurance

agent'' but was acting solely as an "insurance broker'' on behalf of plaintiff.[1]

The premium established by Herndon in the application was based upon the fact that plaintiff's driving record within the three-year period precedent thereto qualified him as a "preferred risk.'' Herndon requested and received from plaintiff a payment of $46.80 and gave him a receipt therefor indicating that it was for "Dn. Payt. to Fin. Auto Liab. Ins. & Comp./Coll.'' In addition, as a part of its services, Herndon had an arrangement with a specified finance company to lend his customers the amounts necessary to pay the balances of their premiums.

Plaintiff's application was forwarded to defendant, apparently via Commerce, and on January 16, 1963, it executed policy No. 691012A expressly made effective for the period "1-3-63 to 1-3-64'' and issued "in consideration of the payment of the premium.'' Therefore, defendant does not, and cannot, contend that its insurance agreement failed by reason of nonpayment of the specified premium. (Cf. Ins. Code, § 484; *Sawyer* v. *State Farm Fire & Cas. Co.,* 69 Cal.2d 801, 806 [73 Cal.Rptr. 232, 447 P.2d 344].)

Defendant's policy further provided that "This Policy Void Unless Countersigned by a Duly Authorized Representative of the Company.'' It was so countersigned on January 16, 1963. Therefore, defendant does not, and cannot, contend that its policy did not supply "retroactive'' coverage to January 3, 1963. (*Slobojan* v. *Western Travelers Life Ins. Co.,* 70 Cal.2d 432, 441 [74 Cal.Rptr. 895, 450 P.2d 271].) The total premium on this policy, however, was fixed at $492 based upon defendant's rates for a "special risk'' rather than a "preferred risk'' as set forth in the application prepared by Herndon. The following provisions are contained in the policy:

"22. CANCELATION. This policy may be canceled by the named Insured by surrender thereof or by mailing to the company written notice starting when thereafter such cancelation shall be effective. This policy, or any portion thereof, may be canceled by the company by mailing to the named Insured at the address shown in this policy written notice

---

[1]Insurance Code, section 31, provides: " 'Insurance agent' means a person authorized, by and on behalf of an insurer, to transact insurance.''

Insurance Code, section 33, provides: " 'Insurance broker' means a person who, for compensation and on behalf of another person, transacts insurance other than life with, but not on behalf of, an insurer.''

stating when, not less than ten days thereafter, such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of change stated in the notice shall become the time of change. Delivery of such written notice either by the named Insured or by the company shall be equivalent to mailing.

"If the named Insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made at the time cancelation is effected and, if not then made, shall be made as soon as practicable after cancelation becomes effective. The company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the named Insured. Premium charged for a three months policy, except renewals thereof, shall be considered a minimum earned premium not subject to any refund if cancelled before expiration, unless at company election.

"In the event of total destruction of the insured vehicle an annual premium shall be earned for the line of coverage under which claim is made."

"24. DECLARATIONS, WARRANTIES AND REPRESENTATIONS. By acceptance of this policy the named Insured agrees that the statements in the declarations and warranties are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance. Incorrect warranties, declarations, statements or representations by insured to the Company or any of its agents, contained in the policy will void coverage under all of the coverages. Any misrepresentation of fact by the insured to the company or any of its representatives in reporting a loss or making claim under any of the coverages shall void coverage for the loss reported or claim made."

"25. POLICY FEE. Policy fee, as set forth under the Declarations in this policy, is not a part of the premium and is fully earned upon the issuance of the policy. Policy fee is not returnable, but having once been paid, shall not again be charged in full upon the renewal, within 30 days after expiration, of any coverage for which the policy fee has already been charged herein."

The policy was thereafter forwarded to Commerce and

delivered to Herndon, without restrictions or limitations, on January 29, 1963, according to the written memorandum of Bernice McGruder, another employee of Herndon who then was handling the matter by reason of the illness of Patricia Jones. On February 6, 1963, counsel for plaintiff wrote defendant requesting a copy of the policy which, he stated, theretofore had not been received by his client although his client on January 23, 1963, had told Herndon's Miss McGruder "that even though there had been an increase in the premium charged, [she was] to leave the coverage as it was and she agreed to do so."

Donald Bartak, defendant's underwriting supervisor, testified that when he received the letter from defendant's counsel, "The file was pulled, meaning our file. Everything was in order. Therefore, I merely passed it on to one of the clerical people, indicating to reproduce a duplicate of this file, and mail it to the person requesting it." An endorsement was attached to the copy of the policy mailed to plaintiff's counsel indicating that it was "effective 1-24-63 [and] forms a part of policy No. 691012A issued to Lawrence T. St. Julian by Financial Indemnity Company. Policy period from 1-3-63 to 1-3-64." This endorsement stated that the policy was amended to correct plaintiff's address and was "not valid until countersigned." The copy sent to plaintiff's counsel indicated that it had been so countersigned at "Los Angeles, Calif. 1-28-63 MP."

In response to an inquiry as to his company's policy when it received "an application for insurance at a rate different than that which the company would care to undertake the risk at," Mr. Bartak testified that "[w]e would take the positive approach of properly rating to what we felt that it should be, and go ahead and have the policy typed up and mailed to the agency." When the trial court asked, "You mean you issued the policy for the same amount of coverage, but only fixed a different rate or premium?" Mr. Bartak replied affirmatively.

Mr. Bartak further testified that plaintiff's premiums had not been rerated because of any shortcomings in his driving record, per se, but solely because the number of his California driver's license indicated that it had been issued less than three years earlier. He explained that "One of the qualifications of our preferred risk category is that you must show evidence of three years of driving experience; the prefix to [plaintiff's] driver's license number indicates that it came

out in '61, and that at that time he didn't have the three years. Therefore, he had to go to the high rate."

Mr. Bartak also explained that in determining the length of plaintiff's driving experience, his company had had to rely solely on the evidence supplied by plaintiff's California driver's license since "that was all the evidence we had." However, he testified that his company would have added plaintiff's driving experience in the State of Washington to his record if "we knew [of] it."

In sum, so far as appears in the record herein, plaintiff was eligible to be rated for the premiums specified in his application and, presumably, could have obtained a second, and corrected, rerating by supplying the defendant with the additional information concerning his prior driving experience in the State of Washington. The application utilized by defendant had not indicated that in answering the questions therein concerning driving experience, the applicant should specify the state or states wherein such experience was obtained.

Before turning to the only issue upon which there was conflicting testimony, certain other documents contained in defendant's file and received in evidence as "Court's exhibits" are worthy of notice. An undated memorandum from Herndon to Commerce was received by Commerce on January 28, 1963, and by defendant on February 25, 1963, according to their respective date stamps. It reads: "Please *cancel* insurance covering 1958 Chevrolet Impala, 2 dr. Sedan as per insured's request. This application *was placed* with Financial Indemnity Company. Mr. St. Julian does not wish to be rerated. Kindly send me *the earned premium statement.*" (Italics added.) Handwritten notes on the face thereof indicate that someone at Commerce had called Herndon on February 19th and 20th requesting a return of the policy previously delivered.

Defendant's "Cancellation Credit Memorandum" dated May 27, 1963, indicates that "Effective as of 02/25/63 [plaintiff's policy] Cancelled: Short Rate," i.e., penalty premium of $134.37 computed by reason of alleged cancellation by the insured. On August 25, 1963, a second memorandum indicated that defendant was amending the cancellation to the "flat rate," i.e., without any premium charge.

The foregoing undisputed, and largely demonstrative, evidence is sufficient, of course, to sustain the trial court's determination that defendant's policy was in effect and provided plaintiff coverage for an accident in which he was involved on

January 25, 1963. Nevertheless, in the trial court defendant sought to establish through the testimony of Herndon's employee, Miss McGruder, that when plaintiff had been advised on January 23, 1963, that he had been "rerated" at a substantially higher premium, he had "rejected" or "cancelled" the policy even prior to its delivery to her employer, and plaintiff's agent, Herndon.

Plaintiff, however, flatly denied ever having "rejected" the policy or requesting a "cancellation" thereof. He testified that when informed of the "rerate," he had advised Miss McGruder that he believed, correctly as subsequent events established, that some misunderstanding as to his driving record must have occurred and he requested her to inquire into the matter so that his eligibility for the lower rate could be demonstrated. He also informed her that in the interim he would check with "Triple A," his former carrier, as to their rates, but that she was to retain his down payment and maintain his coverage with defendant until notified to the contrary by him. He testified that she had agreed so to do.

As indicated by its assignments of error, defendant recognizes that it cannot challenge the trial court's resolution of this conflicting evidence on appeal. (*Cronenwett* v. *Iowa Underwriters etc. Co.*, 44 Cal.App. 571, 573 [186 P. 824].) Further, it necessarily concedes that Herndon, as plaintiff's agent, had no authority to "reject" or "cancel" plaintiff's policy without his consent. In *Hooker* v. *American Indemnity Co.*, 12 Cal.App.2d 116, 120 [54 P.2d 1128], an action virtually on all fours with the instant proceeding, the court stated: "Generally speaking, a broker who is engaged to procure insurance has no authority to cancel such insurance. Section 633a of the Political Code [now Insurance Code, section 33] defines a broker . . . It has been held by the courts of this state that, 'An agent authorized to procure insurance is not thereby made the agent of the insured to cancel the policy . . .' [Citations.]" Therefore, defendant urges only that while the evidence may support the trial court's finding that "plaintiff did not request a cancellation of the policy of insurance," nevertheless, the judgment should be reversed because the court did not find, and the evidence would not support a finding, that plaintiff ever "accepted" the policy it had issued.

This contention is without merit. The court expressly found that "the policy of insurance was in full force and effect from January 3, 1963 to February 25, 1963." Such a finding neces-

sarily includes a determination that plaintiff had "accepted" the policy issued January 16, 1963, and thereafter delivered to his agent, Herndon, though he felt that the increased premium should be corrected and reduced, and his testimony unquestionably supports such necessarily implied finding. As stated in *Bley* v. *Ad-Art, Inc.*, 250 Cal.App.2d 700, 712-713 [59 Cal.Rptr. 26] : ■ "It is of course settled that findings of fact must be made on all material issues. It is equally well settled, however, that it is not necessary to make specific findings as to each of several material issues where the findings, taken as a whole or construed together, clearly show that they include the court's conclusion upon the material issues [citations]. ■ Moreover, a specific finding is not required on an issue where it follows by necessary implication from a general finding ['citations]. ■ And, finally, it is also settled that where proper findings have been made upon the various issues of the case it is not necessary to negate issues contradictory thereto. The finding on a particular issue is an implied negation of all contraditory propositions [citations]."

■ It is true, of course, as defendant observes that the court's judgments unnecessarily and perhaps inaccurately, established the amount of defendant's earned premium and improperly purported to make the effectiveness of defendant's policy conditional upon plaintiff's payment thereof within ten days after entry of judgment. However, the record before us fails to indicate that defendant ever objected to the form of the judgment or the findings filed herein. If the court erred in fixing the amount of the earned premium at the sum set by the defendant itself on May 27, 1963, it may not be heard to complain thereof on appeal.

The determination of the amount of the earned premium, and the manner of its payment, actually were not among the issues tendered to the trial court by plaintiff's complaint, defendant's cross-complaint, or the joint pretrial statement filed herein. The trial court apparently determined to resolve this subsidiary issue in order to resolve all potential areas of dispute in one proceeding. Inasmuch as plaintiff has not appealed from any portion of the judgment, and defendant does not urge that we strike the premium awarded, or increase the amount thereof, we perceive no reason to inquire into its technical accuracy. It is sufficient to hold, as we do, that any inconsistency arising from the amount of the court's unnecessary premium award and its determination that defendant's

insurance policy was in full force and effect at the time of plaintiff's accident, the ultimate single issue herein, is not such an inconsistency as to warrant a reversal of the court's primary declaration. As stated in *Richter* v. *Walker,* 36 Cal.2d 634, 639-640 [226 P.2d 593] : ▮ "As to the principles governing appellate courts in considering the adequacy of findings to dispose of issues and support a judgment it is a general rule that 'Even though a finding might have been more clearly phrased, it is sufficient if its language is clear enough to indicate what the court intended; and if there are findings sufficient to support the judgment, they are not vitiated by the unintelligibility of others. ▮ Any uncertainty in the findings will be construed so as to support the judgment rather than to defeat it.' [Citation.] ▮ Even where findings are to some extent inconsistent a judgment may not be set aside unless the conflict is clear and material and the findings are incapable of being harmoniously construed. [Citations.] ▮ Furthermore, general findings that all the allegations or denials of a pleading are true except those as to which the court makes a specific finding, are upheld if by reference to the pleading the import of the finding is reasonably certain. [Citations.] ▮ It is also to be noted that while full findings are required upon all material issues a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made. [Citations.]''

The judgment is affirmed.

Roth, P. J., and Wright, J., concurred.