[Civ. No. 47702. Second Dist., Div. Five. Jan. 11, 1977.]

EVA ADAMS, Plaintiff and Respondent, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, Defendant and Appellant.

## Counsel

Spray, Gould & Bowers and Daniel O. Howard for Defendant and Appellant.

Parker, Stanbury, McGee & Babcock and Jerome L. Ringler for Plaintiff and Respondent.

## Opinion

**HASTINGS, J.**—This is an appeal from a summary judgment in favor of plaintiff/respondent Eva Adams (Adams) against State Farm Mutual Automobile Insurance Company, defendant/appellant (State Farm).

## FACTS

On November 19, 1967, State Farm issued a policy of automobile liability insurance to Robert B. Cary and Daniel Burley as the named insureds and covering a certain 1957 Pontiac automobile as the described vehicle. The initial policy period for the policy was November 19, 1967, to May 19, 1968.[1] The policy provided for a premium of $105.90 for the initial period.

After May 19, 1968, a premium payment for the next six-month period was due. On August 9, 1968, State Farm mailed a notice of cancellation to Cary and Burley informing them that the policy was being cancelled effective August 22, 1968, for nonpayment of premium.

On September 20, 1968, Adams was involved in an automobile accident with the 1957 Pontiac that was driven at the time by Burley. Subsequently, Adams filed a complaint for damages in the superior court naming Burley and Cary as defendants and claiming that she received personal injuries as a result of the automobile accident. State Farm refused to extend coverage to Burley and Cary on the ground that the policy had been cancelled prior to the date of accident for nonpayment of premium.

Prior to trial, Adams signed a covenant not to execute on the judgment in return for an assignment of any and all rights Burley and Cary possessed against State Farm. On March 7, 1973, after a default hearing, judgment was entered in favor of Adams for the sum of $14,500 plus costs. Adams then filed a complaint for breach of the insurance contract in the superior court against State Farm, seeking to recover the amount of the default judgment entered against Cary and Burley in her favor. State Farm answered the complaint, alleging as an affirmative defense that the policy was cancelled for nonpayment of premium prior to September 20, 1968.

Adams, relying on *Sawyer* v. *State Farm Fire & Cas. Co.,* 69 Cal.2d 801 [73 Cal.Rptr. 232, 447 P.2d 344, 44 A.L.R.3d 1348], and California Insurance Code section 484,[2] filed a motion for summary judgment,

---

[1] This is clearly stated on the facing page of the policy, a copy of which is attached hereto as Exhibit A.

[2] Insurance Code, section 484 (amended by Stats. 1969, ch. 536, § 1, p. 1162) provided: "An acknowledgment in a policy of the receipt of premium is conclusive evidence of its payment, so far as to make the policy binding, notwithstanding any stipulation therein that it shall not be binding until the premium is actually paid."

contending that the State Farm policy could not have been cancelled for nonpayment of premium because the policy issued to Burley and Cary acknowledged that the premium had been paid. State Farm also filed a motion for summary judgment on the ground that it had a good and absolute defense to the action. The court granted Adams' motion for summary judgment and denied the motion of State Farm. This appeal followed.

ARGUMENT

It is Adams' contention that on May 19, 1968, the last day of the initial premium period the policy automatically renewed itself for an additional six-month period unless a notice of intention not to renew or notice of cancellation was mailed to Burley and Cary before the expiration of the initial policy period.[3] Since State Farm did not send such a notice, this additional six-month period was a portion of the *stated term* (as distinguished from *initial term*) of the policy. Therefore, inasmuch as Burley and Cary had paid the first premium of the stated term the rule in *Sawyer* v. *State Farm Fire & Cas. Co., supra,* is dispositive of the issue. The *Sawyer* rule is that acknowledgment of a paid premium in the policy is conclusive evidence of payment so as to bar an insurer from offering evidence as to nonpayment of premium during that period of time covered by the stated term of the policy.[4]

---

[3]Adams relies on that portion of the policy's paragraph 7 italicized below:

"7. Cancellation . . . The company may cancel this policy in accordance with the terms hereof by written notice, addressed to the named insured and mailed to the address shown in the declarations stating when, not less than ten days thereafter, cancellation shall be effective. Such notice of cancellation shall be sufficient notwithstanding the death of the named insured.

"The mailing of the notice shall be sufficient proof of notice and the effective date and hour of cancellation stated therein shall become the end of the policy period. Delivery of written notice shall be equivalent to mailing.

"*Unless, within 60 days of the effective date of this policy, the company mails or delivers a notice of cancellation to the named insured in the manner provided in the two preceding paragraphs, the company agrees as to each coverage in force on such effective date*:

"*(1) to continue such coverage in force until the expiration of the current policy period,* and

"*(2) to renew this policy for the succeeding policy period, unless the company advises the named insured of its intention not to renew this policy by notice sent to such insured not less than 45 days before the expiration of the current policy period,* in the same manner as is provided herein for notices of cancellation by the company. Such renewal shall be at the rates legally in effect at the time thereof.

"These agreements shall be void and of no effect: (a) if the premium for the policy is not paid when due; . . ." (Italics added.)

[4]In *Sawyer,* the insureds (husband and wife) purchased bodily injury liability and property damage liability with respect to their vehicle until a specified date in October 1961. The policy was purchased in April 1961, at which time the premium for said policy

State Farm argues that it complied with provisions of Insurance Code section 651 and the cancellation provisions of the policy when it mailed the notice of cancellation to Burley and Cary on August 9, 1968.[5]

State Farm does not argue with the *Sawyer* decision since it was based upon the provisions of Insurance Code section 484, but states that *Sawyer* is applicable "only to the *stated* or *initial* policy period." In *Sawyer,* the initial and stated policy period was for one year, and the court stated at page 810: "The principle to be distilled from the *Palmer* [*Palmer* v. *Continental Ins. Co.,* 132 Cal. 68 (64 P. 97)] and *Masson* [*Masson* v. *New England M.L. Ins. Co.,* 85 Cal.App. 633 (260 P. 367)] cases is that the conclusiveness of the acknowledgment in the policy of the receipt of payment of the *first premium* precludes the cancellation of the policy for nonpayment of premium *at any time during such premium period.*" (Italics added.) State Farm disagrees that the policy automatically renewed itself; therefore, the *stated* or *initial* policy period in the present case is one and the same, namely, from November 19, 1967 to May 19, 1968. Adams contends said period is only the *initial* policy period and the *stated* policy period is the "Policy Period" as defined in the policy.[6] According to Adams, this period would not end until November 19, 1968, because of the alleged automatic renewal of the second six-months period as stated earlier.

---

was prepaid. Thereafter, the insureds acquired a second vehicle, and on August 31, 1961, they went to State Farm's office and arranged for insurance to cover both of their vehicles. On October 19, 1961, State Farm's agent insured and delivered to the insureds a new policy providing coverage for both vehicles for the period of August 31, 1961, until April 29, 1962. Two payments were made by the insureds, but a balance of $42.25 remained due and owing before the initial policy (one year) expired. In February of 1962, State Farm mailed to the insureds a notice of cancellation for nonpayment of premium, said cancellation to be effective on February 26, 1962. On February 28, 1962, the insureds were involved in a collision and State Farm refused to defend and indemnify them.

The State Farm policy in the present case contains the same acknowledgement. It states: "STATE FARM . . . In consideration of the premium paid and in reliance upon the declarations made a part hereof, agrees with the insured named herein, subject to the provisions of the policy."

[5]Insurance Code, section 651, (repealed by Stats. 1974, ch. 982, § 1, p. 2034) provided in pertinent part: "Notwithstanding any other provision of this code, no cancellation by an insurer of an auto liability insurance policy, . . . shall be effective prior to the mailing or delivery to the named insured at the address shown in the policy, of a written notice of the cancellation stating when, not less than ten (10) days after the date of such mailing or delivery, the date the cancellation shall become effective."

[6]The paragraph in the policy Adams relies upon is as follows: "The policy period shall be as shown under "Policy Period" and for such succeeding periods of six months each thereafter as the required renewal premium is paid by the insured on or before the expiration of the current policy period. The "Policy Period" shall begin and end at 12:01 A.M., standard time at the address of the named insured as stated herein. The premium shown is for the policy period and coverages indicated on page 1."

## DISPOSITION

█ Both parties agree that this court is not bound by the interpretation of the State Farm policy adopted by the trial court and that we must make our own independent interpretation of the contract. (*Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) █ We conclude that the "policy period" was from November 19, 1967 to May 19, 1968—i.e., the first six months. Accordingly, the *initial* and *stated* policy periods are one and the same and encompass only the first six months. *First,* there is no uncertainty or ambiguity about the "policy period" that might aid Adams. (*Ogburn* v. *Travelers Ins. Co.,* 207 Cal. 50 [276 P. 1004].) As the appendix, *post,* page 827, demonstrates, it is clearly defined on the front page of the policy. *Second,* we reject Adams' argument that the policy was automatically extended for six months because State Farm had not sent Burley and Cary a notice of intention not to renew or notice of cancellation before the *initial* or *stated* policy period had expired. Adams cites only a portion of the policy referring to renewal or cancellation (see fn. 3, *ante*). She failed to add the paragraph immediately following her cited italicized portion, which states in no uncertain terms: "These agreements shall be void and of no effect: (a) if the premium for the policy is not paid when due. . . ." The second six-months' premium was not paid during the *initial* or *stated* policy period or thereafter. State Farm then complied with California Insurance Code section 651 (see fn. 5, *ante*) and its own policy provisions (above), by giving Burley and Cary the required 10 days notice. Burley and Cary do not deny the mailing or receipt of this notice. The premium was not paid; therefore, the policy was cancelled as of August 22, 1968, approximately one month before the accident. The provisions for cancellation that Adams relies on clearly do not apply if the renewal premium has not been paid. (See *Jensen* v. *Traders & General Ins. Co.,* 52 Cal.2d 786, 799 [345 P.2d 1].) Primarily, they are there to give adequate time to the insured to obtain other coverage if the insurer is not going to renew the policy or is cancelling for reasons other than nonpayment of the renewal premium.

*Sawyer* is not controlling. The court in *Sawyer,* at page 807, said: "[T]he amount acknowledged to have been paid must be deemed to be that amount for the stated term of the policy . . . ." The *stated* term was also the *initial* term in the policy under consideration and had ended. For reasons stated earlier it had not been automatically extended.

The summary judgment in favor of Adams is reversed. The cause is remanded in order that summary judgment can be ordered in favor of State Farm.

Stephens, Acting P. J., and Ashby, J., concurred.

---

## APPENDIX

### EXHIBIT A

9515 58 California

### WARNING

Unless you have automobile insurance written by a Mexican insurance company, you may spend many hours or days in jail, if you have an accident in Mexico. Insurance coverage should be secured from a company licensed under the laws of Mexico to write such insurance in order to avoid complications and some other penalties possible under the laws of Mexico, including the possible impoundment of your automobile.

STATE FARM INSURANCE

# STATE FARM MUTUAL
# automobile policy

*authorized representative*                          *issuing office*

I certify this is a true copy of the original policy issued.

Southern California Office
1727 W 17th Street
Santa Ana, California 92706

James C. Lyons, Jr
SERVICE SUPT., WEST LOS ANGELES COUNTY DIVISION
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

HOME OFFICE
BLOOMINGTON, ILLINOIS

## DECLARATIONS

| POLICY NUMBER | POLICY PERIOD (Month Day Year) | AGENT | COV | LIMITS OF LIABILITY |
|---|---|---|---|---|
| 5370 492-E19-55 | 11-19-67 to 05-19-68   7760 73 | | A 10 | In Thousands of Dollars — EACH PERSON |
| CARY, ROBERT B &. BURLEY, DANIEL | COVERAGE AS DEFINED IN POLICY | | | 20  EACH ACCIDENT |
| 335 W 235TH ST | A B | | B 10 | 10  EACH ACCIDENT |
| WILMINGTON CAL | COVERAGES  $ (AMOUNTS) T | | C | EACH PERSON |
| 90744 | | | | |

MEMBERSHIP

$10.00
Premium for Policy Period shown above

$105.90

The premium the is for the policy period and cove indicated hereon

PONT  57 2DR  C757H10451
MPP  000513 20

PAGE 1

Declarations
Continued
On Page 10